Next we'll hear an argument in both case numbers 06-1032 and 06-1040, the first being Intel v. Commonwealth Scientific and the second being titled Microsoft v. Commonwealth Scientific. Mr. Wagstaff, the rule of process will be as follows. We're going to give you up to 30 minutes, although you may not need it, to argue in both cases, and then serially we'll give Mr. Randall and then Mr. Shelton each up to 15 minutes to argue with the restriction on Mr. Shelton being that he's not to repeat anything that Mr. Randall has already said. So in fact, it may be less than 15 minutes. Is that clear enough to everybody? It is, Your Honor. Perhaps I should then save seven minutes for rebuttal. Whatever portion of your 30 you care to reserve is up to you. Well, that's fine, Your Honor. This avoids the groundhog day. I've worried about flying here if we argue something twice. So I'm happy to do it. Your Honor, may it please the Court, I'm James Wagstaff. Mr. Shelton, what we're going to have is just very straight on the clock. Yes. And he's reserved the seven for rebuttal, so the yellow light goes on at 23. Thank you. So may it please the Court, I'm James Wagstaff. I'm appearing with my co-counsel, Gary Ritchie and Nancy Thompkins, on behalf of CSIRO. The issue here, initially as to the exception, under the commercial activities rule, is whether a foreign government's exploratory and ultimately fruitless patent license negotiations, which do not result in a contract, a license, or a sale. We know the facts. There's no question at all what the contacts were and what they resulted in and what they didn't result in. But isn't it true that a contract was proffered to each of the alleged infringers, which would have clearly become a binding, legally enforceable contract if the recipient had simply signed on the dotted line as requested? That's correct, Your Honor. No question about it. Why isn't an offer of a contract for execution a sufficient commercial act to avoid the immunity? Well, for two reasons, Your Honor. The statutes draw the line, and we'll get to it in a moment. The action nevertheless has to be based on that activity. Let's talk about based on this. I brought the legislative history, and I found it, because they tell us about a spectrum of acts. Clearly, it would not be enough, Your Honor, if my client simply flew to the United States and set up a meeting. No, no. Let's stick with the question. The question is, when they proffered a contract that would be fully executed upon signature, why isn't that proffered sufficient commercial act to settle the issue? Because it does not result in... Because they didn't sign it? Just the fact that the recipient didn't sign it? That means it's not a commercial act? Yes, Your Honor, it does. And let me say why. The legislative history tells us, at the low end of the spectrum, for every contract. If we back up for a second, Your Honor, this is an odd case. It's declared totally... Wait a minute. I'd like you to quote the language that shows that you need a completed contract to have the minimum allowable showing of commercial activity. At the other end, I'm quoting from the legislative history, from the House. At the other end of the spectrum, a single contract, I'm not saying negotiations or potential contracts, is of the same character as a contract which might be made by a private person. Then in giving the example, it speaks of a sale, actual leasing, borrowing of money, employment, investment, completed transaction. So the response would be, well, wait a minute. Isn't it really commercial by nature? We have to start with two things. One is, we do not look at motive. We know that both ways. The government can come here and buy shoes for military personnel. That's governmental in nature, but we don't look at motive. Mr. Weiss, the problem I have with your completed contract argument is, isn't it a bit of an oxymoron to say that the only time you will have an exception to the foreign state immunity is when there is a completed contract executed in this country, because once there's a completed contract, presumably there's no reason to sue anybody. Well, on a breach, Your Honor, there'd be a lot of reasons. There is a possibility of some later breach, but that's not at all the issue. The issue here is, in this area where you have a patentee threatening potential infringers, the notion that you are immune from the reach of the United States courts until you actually complete a contract before you have any commercial activity strikes me as oxymoronic. Now, that's not an accusation. You personally, I'm referring to the argument. I'll take the second half of the oxymoron, perhaps. Your Honor, I understand the jumbo shrimp argument, that there's an argument that can't, it's not a contract yet, and therefore. But let me, if I could, just for a moment, tell you something that occurred to me flying out of it that may be of some thought on this. This is the court's release case. The statute, for procedural not jurisdictional purposes, allows someone in the patent area to come into court who would have otherwise been a defendant and say, I think you might sue me. We'll start with that. Because clearly, the Foreign Sovereign Use Act only applies if it's based on an act that would give rise to liability. Let me tell you why. Because it only comes up when the foreign government is a defendant. I want to back up and tell you that the foreign government in this case is a putative plaintiff under your authority and the authority of all the circuits in this country. This is a declaratory release case in which the procedure allows the would-be defendant to come in and say, I've got some defenses that I want to get on the table right now. My client is not a putative defendant in this case. The Foreign Sovereign Immunity Act is designed to say, if you sue the government, then the government is to engage in surmise. Now you say, wait a minute. What about, isn't a declaratory release case simply an anticipatory counterclaim? That would be great if they had affirmative claims. But they don't. Intel and Dell have no affirmative claims. And I can argue why the misuse, if you read the complaint, is really simply an anticipated defense. We start with that. So we have here a situation where my client is a putative plaintiff. And the Foreign Sovereign Immunity Act is irrelevant. And I say, wait a minute. Did Congress address it? They did. They didn't forget it. I think they addressed the contract this year. I don't know. I thought we had before us your motion to dismiss the lawsuit on the basis that your client was immune. Yes, Your Honor. So I don't understand how you can complain that sovereign immunity really shouldn't be considered in this context. You're the one who put it forward as the basis of your motion. Your Honor, I understand. I'm not suggesting I can't raise the motion. I'm suggesting – Well, you're suggesting you're a putative plaintiff and, therefore, the Foreign Immunity Act doesn't apply to you. But as the Chief Judge just pointed out, if that's true, you're out of here. Bye. No, I'm not, Your Honor. I'm not. Your Honor, in the last argument, you said a dog has to bark. Congress said a dog has to bark. There must be a claim that's risen to the level of leaving rights, tort or contract, before my client could be sued. If they were putting aside declaratory relief, which does not create jurisdiction, before my client could be sued, there must be a tort or contract. That's what the statute says. I'm not making it up. That's what they say. The end of the spectrum, or the lower end of the spectrum. Because if no dog's barking, there's no lawsuit. So what we've got here is they're using the declaratory relief procedural statute to do what they couldn't do until my client sued. That's why I was, in a moment, saying 1607 helps us here. Congress entertained and analyzed what to do if it's an affirmative claim, when they can counterclaim back. In this case, they could not do so. Were you done with that point? I didn't want to interrupt you. Yes, I interrupted you. Very well. Well, I think we understand the declaratory judgment point. Let me return back to the point you were making about the need for a contract as an irreducible minimum of commercial activity. Suppose that, following the fabulous success of the Yugo, Australia decided to make the Ostro, let's say, car. And they advertised it widely in the United States during the fall of 2006. Available orders will be taken as of January 1st, 2007. So just advertising and seeking to build up an interest in a potential customer base, but no contracts. And somebody who felt that this violated their rights, say, under the Lanham Act, falls in advertising where they're sued. Would you say no commercial activity? No, there would be, and I'll tell you why. Because we now have a completed act which gives rise to liability. In this case, Your Honor. What's the completed? The Lanham Act violation. If in this case, my client had to pay me. You mean because the violation is for activity which does not constitute a contract, then the conduct that doesn't constitute a contract is then commercial? Yes, Your Honor, and let me explain why, if I could. There has to be something which gives rise to liability. And we should take some solace that you can look in case after case after case. This has been there a long time. And there's no case by it, and this is where it's so acknowledged, in which mere negotiations that had not risen to the level of a contract or a tort could somehow not be right. In that case, Your Honor, there was a Lanham Act violation. Or if you'll permit me to be more simplistic, in our negotiations here, let's suppose my client could pay me something. Or there was an interference with contract that gave rise to a tort. If it rises to the level of a completed tort or a contract, that would be the lower end of the spectrum at least. Added, the watch and the time, it added to the other commercial activity. So the lower end of the spectrum really isn't, the irreducible minimum, isn't a contract, right, for commercial activity. The lower end of the spectrum, I think, is, it has to be something which, and I think that's what we're discussing here. Something which creates a cause of action. Correct, Your Honor. But of course, the creation of a cause of action is, I mean, setting the declaratory judgment issue aside for a moment. If you have created a cause of action, that's going to be present in every case in which somebody sues. And therefore, your commercial, I'm not sure where your commercial activity limitation comes in. If you accept that any activity that creates a cause of action constitutes commercial activity. I think you just waived an awful lot of the sovereign unity of that. Well, I don't think so. Because this is a unique statute, Your Honor, it uses the word based on. If you look at something that is based on commercial activity. Based on commercial, got me wrong. And they get smushed together. The suit has to be based on the commercial activity that is at issue. Now, I want to pursue, if I may, Judge Bryson's point. When the commercial activity, let me preface it with this. Would you agree with me that our foreign immunity statute is essentially designed, and I too have read the legislative history, is essentially designed to separate out sovereign acts, the activities of the sovereign state, which are peculiar to sovereigns, from activities of a sovereign state, which are not peculiar to sovereigns, but which could be conducted by any commercial enterprise? Would you agree with that? Forgive me for my impertinence. I would not agree, Your Honor. You would not? Even though the legislative history is quite explicit? Well, for example, Your Honor. Even though the legislative history is quite explicit on that? I think I, with due respect, think that if you look at Saudi Arabian cases like it and the motive cases. You cited the legislative history to me, and I'm just citing it back to you. I think the legislative history makes that point, doesn't it? Well, I read the House report I'm playing, and I actually don't think it draws that distinction. But let me say why. The cases tell us you don't look at purpose. Otherwise, the government could say, I'm buying the shoes, and that's an example of one of the cases, to supply our military. It's a governmental purpose. The binary division between governmental and non-governmental is what the district court did, with all due respect, is incorrect. You look at the actor. I've been in this courtroom before, and we have a concept. You look at the actor. Is it a government or a government instrumentality? And then you look at the quantity of context. And what I'm getting at now, Your Honor, is you don't look at any context that are not based on this particular cause of action. That is, if there's commercial activity, and that commercial activity is at most evident in the case, but the claim itself is not based on the conduct taking place. That's why, in this situation, putting aside the peculiarity of the fact my client is brought here by the court to relieve a non-jurisdictional statute, that is why it does rise, because it's based on it being a completed cause of action. Your Lanham Act example took Bryson's absolutely correct. The act would constitute a completed cause of action. All right, let's assume for the moment my argument has some validity, and I invite your attention to page 6605 of the legislative history, which I believe is the House report. And this is what they say. First, the bill would codify the so-called restrictive principle of sovereign immunity as presently recognized in international law. Under this principle, the immunity of a foreign state is restricted to suits involving a foreign state's public acts. I'm not sure my Latin is perfect. And does not extend to suits based on its commercial or private acts. So they do seem to have that. And if you'll concede that much to me, just for argument's sake. I will, Your Honor. Just for argument's sake. And for more, perhaps. Okay. Then let's ask this question. Let's assume a private organization seeks and obtains a patent. Is that commercial activity, do you suppose? Comes into the United States. A company, we'll say an Australian company, comes into the United States and seeks and obtains a patent on a product. Is that commercial activity? It could be if the cause of action derives directly from the act of getting the patent. It could be that sort of thing. From the act of getting the patent, but not from the patent itself. We don't separate out the phrase based on commercial activity and eliminate based on it. Say if you're engaged in any commercial activity, somehow you lose your immunity. My client can come here and sell a lot of widgets, but the lawsuit doesn't arise from the widgets. We don't have an exception to the cost of the immunity. The mere act of engaging in commercial activity does not mean that the exception is lost. Okay, fine. Let's assume you obtain a patent on those widgets. The next thing you do is you send a letter to someone who is selling something that looks like a widget, and you say, hey, widget seller, I have a patent on widgets. How's your weather? Is that commercial activity? No, Your Honor, it's not. That's a bright line that I've been drawing. We don't have a plane there. Okay. How about if the patentee then has their attorney call the lawyer that belongs, the seller's lawyer, and say, you know, we sent you that letter about our patent on widgets. It looks a lot like what you're selling. Do you want to check into that? Is that commercial activity? On the slippery slope here, no, it is not, and the reason is not because the cause of action is not based on the act of getting the patent. It's mostly based on my pewtered claim for infringement, which I haven't brought in this case. But yes, Your Honor, so far, no commercial activity. So far, no commercial activity. Well, because I think because of the language based on it, because the statute says, well, forget it, Your Honor. We know from the transatlantic case and other cases. If you threaten litigation, that's not commercial activity. Say it again, Your Honor. If you threaten litigation, that's not commercial activity. Threatening of litigation is not independently actionable. How about if you bring suit against another widget seller who looks an awful lot like the seller that's being threatened? If the second suit is based, the claim in the second suit is based on what you did in the first suit, the act of litigating, yes, it was a prosecution by way of example. So if you were to sue Buffalo, for example, while all this was going on, that would be Buffalo being a company that's engaged in the same activity. I'm not sure whether to call them plaintiffs or defendants anymore. We'll call them the plaintiffs in this case. That's still not commercial activity. That's what I want to hear. Why is that? When do I fall over the cliff? I think I know your answer. Well, sure. I'm a bright line guy. Your Honor, here's where I think it goes. You start with the notion, the mere fact of suing someone does not necessarily open the door to your exemption from immunity for another suit if it isn't based on it. I'll tell you what I was saying in the second case in transatlantic. You're analyzing it with all due respect on a but-for basis. You're saying but for this, this wouldn't have happened. That's not what based-on language is. It is when you bring – so the punitive claim here is a claim that we haven't brought yet. I've already made that point. For patent infringement. That's what they're saying. You're going to sue us with patent claims. Does the patent infringement case here depend upon what happened in the negotiations? The answer is no. If your Honor's conclusion is it depends on getting the patent, that would open – you talked about opening the door wide. Every time a foreign nation gets a patent, every time a foreign nation gets a patent, that would be a waiver of the sovereign immunity. That's not the law. There's no case law that suggests that. How about if it depends on whether the patent foreign nation that owns this patent comes into the United States and sends packages of material to potential infringers and says, sign up, guys, or we're going to sue your little selves. Okay. So the record's clear. Our view of the record is very clear. We didn't say, so we'll sue you. We did it the opposite. We wrote a letter to HP and said, we're not going to sue you. We sued Buffalo, which was a test case, and sued nobody else. We waited – this notion of we're going to sue you, this is the slowest moving – How about if we said there's a possibility of litigation, voluntary licensing program closes 187 days from offer. We may then commence litigation against one or more firms, which you happen to be one. That's not a – You're not going to say why it's not. You probably worked before, joining our ranks, and I bet you wrote a letter more than once, as I have in my career, saying I represent – I'm sorry. I was a law professor. I never did anything like that. You got a letter from a professor on malpractice. And people can, in fact, say I'm considering litigation. People can, in fact, say retract or L. I represent newspapers. People write – the current trick is draft a complaint and make it look like you're going to sue. And we all know that that often doesn't happen. And it didn't. And you know what? Joseph Keller wrote a book called Something Happened. I think they're playing this like it's Catch-22, if you'll forgive the comparison. If you even come in and talk about licensing, if you suggest that maybe they have to do it and maybe there'll be something on the line, you're automatically in the door. Something has to happen pursuant to the legislative history, and there's a reason for that. It's not only to avoid the slippery slope. If something happens, Your Honor, on your – you say I'm falling off the cliff. Something happens when I fly to the United States to set up a meeting or make a telephone call or show up at the meeting. At what point – and the reason why I think the low end of the spectrum in this context – and we take out – I think of the equation. I'm not trying to defend it because we're a punitive plan. The low end of the spectrum is that something rose to the level of a cause of action. And it's appealing to say, but wait a minute. You came in here and did things, which is why Congress – if you look at the statute, it's very interesting. It says based on in clause A, but it says in connection with in clauses B and C. There's got to be a difference. But it's A that we're under, isn't it? It is. Based on is much stronger. Based on is – my kids are an ally. They do Venn diagrams, as you might recall. The question is, do we need anything that happened in the negotiations, the supposed commercial activity that Your Honor is concerned with, do we need that for this Declaratory Relief case? Does anybody else in the background know? Because if we don't, it's Saudi Arabia. Because in the Saudi Arabia case, the Supreme Court said, yes, but for your employing this person and placing this situation, there would have been no torture. But that's not but for. As my dad used to tease, but for my grandfather moving from Canada, we wouldn't exist because he would have never met my mother. And this statute distinguishes that. It tells us, I submit, it tells us that's the – not just in connection with, not that there's a relationship. The cause of action here, and here the punitive infringement takes my class abroad, the cause of action must be based on the negotiation. Intel and Dell have nothing other than infringement. Is prior art, is invalidity, is the infringement in any way dependent upon those negotiations? The answer is no. It isn't. You don't need that. Those two are not happy at all other than the procedural night to be in whether they can be in court first. That's all. That goes to the jurisdiction of the Declaratory Relief, not the exception. And it can be troubling saying at what point, but Congress told us because there's a presumption. Remember where we got here. I know it's easy to forget. We got here because my client presumptively entitled immunity. I thought you got here in Qantas. Well, that's true, too. And that's not true. I was on another airline. I should have flown to Qantas. And, in fact, we got here because we take limited view of the exceptions and because the Supreme Court told us. And this is the language of the Supreme Court in 76. This exception applies if you are doing business. And the Congress kind of was, I think, the lower inspection is you've got to do something in business that is right either toward the contract or the plan. And that's why based on, has to be our Venn diagram, the evidence of the negotiations is not going to be the basis of the cause of action. And that's what the case law says. Let me return, if I can, to the point that you made in response to my hypothetical earlier. I just want to make sure I understand exactly what you're saying with respect to the meaning of commercial activity. Correct me if I don't restate your position correctly. I thought you were saying that if there is a cause of action which a private party would have under the same circumstances, then the conduct by the foreign sovereign that leads to and creates that cause of action is commercial activity. Yes. If it's an affirmative cause of action for toward a contract, yes. If you will, your Honor, the quantum of commercial activity necessary to overcome the presumption of the immunity has to be sufficient that whether it's a legally significant act or whether it's not the equal cause of action. That's what I think we're hearing. So the tort of conversion, let's say, would render an appropriation by a foreign government of private property actionable commercial activity? Yes, Your Honor. That would be sufficient. That would be the law in the spectrum. And that's what the case is talking about. Well, where would – I mean, there's certain conduct. You named it. Whatever conduct that would be absolutely clearly sovereign activity, the kind of sovereign activity that I think Judge Plager was talking about as being intended to be protected, but nonetheless if committed by a private person, assuming the private person could commit that particular kind of conduct, would be tortious. You're saying that as long as there's a tort, which if committed by a private person, the immunity goes away. Well, Your Honor, may I be clear? There's a separate immunity exception that we're not talking about here today. It's a commercial – this is a tort exception. That's got some limits that would affect your answer. Well, but for purposes of commercial activity, you're saying if there is a cause of action that would be present in the case of non-sovereign activity, then it's commercial activity, even if it looks awfully sovereign. Well, and that's the example of the case, Your Honor, which is the example right from the case says if the government comes to this country and says, I'm going to buy shoes for our military, clearly that's maybe the most sovereign activity. If you will, a sovereign act at least in this day and age to fund and supply your military. That's the ultimate sovereignty. And the case law says even though you have a governmental purpose, that doesn't answer the question because purpose is, to quote from the last argument, irrelevant in this context. What's relevant is who is the actor, government or not, and what is the quantity of commercial activity, and ultimately does this cause of action arise? This statute did not come from nowhere. I was a – I teach civil procedure, so I'm an adjunct, or as one of my students said, a junk professor. And, Your Honor, personal jurisdiction emanates this. Subposition A is like a specific jurisdiction statute. We have general jurisdictions that are doing so much business you get stuck anywhere. But specific jurisdiction says you can only be sued, personal jurisdiction, power of court, absolutely, if the cause of action is directly related to the context that you established. Now, it's even stronger in this context, and several circuits in this context have absolutely rejected the but-for. It's not enough that because you negotiated it might have given rise to a cause of action. It is not enough that, with all due respect, you go get a patent and, therefore, you open the door to being sued on the patent, even if, because on that theory, people we didn't talk to would be able to get there. We don't have to wait for that. They can just come in and sue us. We never talk to Intel in this case. We never interact with them, and they're here. And under the theory that the patent's enough, which I think Congress might have done something about if they thought that was the whole thing, they can come in and sue us. We don't have to wait for anything. If the patent's enough, it's activity, come sue us. We know that's not the law. So, in fact, the based-on language gives us the ability to limit, and it should be limited, the exception of the immunity because we presume, for collective reasons, that we don't haul nations into our courts unless—I'll go with your idea—unless they're acting like a private person in a commercial capacity. I'll go that way, Your Honor, but motive irrelevant, but to the relevant level of quantity and at the level of the spectrum. And I don't think Congress was acting accidentally when they said the end of the spectrum is at least a contract. Obviously, the top side of the spectrum would be a lot of activity, running a business, International Shoe having their 13th salesman in Washington. We'd have all those things. Maybe even, in subdivision B, being physically present in the country when we do something, like we have in personal jurisdiction. This is not far off from what we were thinking. Presumed immunity, you won't be sitting here and saying, oh, boy, but they came here and they were talking and they were engaging. Why is that commercial activity? Because Congress told us that it has to be at a level of quantity. The mere fact that you engage in commercial activity is not enough. It has to reach a quantum level. We know that, or the legislative system is meaningless. And based on KELTA, that it must be a comparison of two circles, and they make you, well, wait a minute, misuse. Some of the litigants here, not all of them, have a misuse claim. That's affirmative, they say. And, as Groucho Marx says, who's going to believe me or your own two eyes? Go read the claim. It is based on not some allegation that we're doing something in an improper way, getting a right to damages. It is saying that our patent can't be used, hence our pure infringement case is defended. You have a minute and a half left of your rebuttal time. Why don't I stop now? Thank you. Mr. Randall? May it please the Court, Jeff Randall, this is Ken Marx, representing both Dell Computer Corporation and Intel Corporation. I'd like to address the two main issues before the Court, namely that the CSIRO... Would you speak up a little, please? Certainly. Sorry, Your Honor. That CSIRO's campaign to collect hundreds of millions of dollars from the U.S. wireless industry is ongoing commercial activity under Section 1605A2, and that CSIRO is subject to suit just like any other private entity that is engaged in the same conduct. And two, that if the Court elects to entertain the declaratory judgment findings by the District Court, I will address the substantial evidence that supports those findings and note that CSIRO has not either proven nor can it prove that the Court committed clear error in reaching those findings that support the declaratory judgment jurisdictions. Mr. Randall, why don't you concentrate on responding to what Mr. Wagstaff said? We have your brief. We have his brief. Your role here is to respond to what he said here, not to argue your brief or argue against things that he didn't raise. Certainly, Your Honor. I believe that counsel was arguing and placing defendants or potential defendants and companies in the U.S., like Dell and like Intel, in the ultimate catch-22. I think that he is suggesting that a foreign entity like CSIRO It's not going to help us if you editorialize. What's going to help us is if you discuss the legal basis he argued for why the immunity would be applicable here and the exception not applicable. That's what we need you to address. There is no bright line test, as he indicated. He indicated that there is a bright line test. He read a sentence from legislative history, so it seems like you should respond to the language in that sentence. Legislative history makes it clear that there is a broad spectrum of activity, both commercial acts and commercial transactions, that could support defining commercial activity and eliminate any immunity. The U.S. Supreme Court, in both Weltover and Nelson, has also made it clear that Congress intentionally left commercial activity largely undefined. However, Weltover... Well, his argument is, yeah, largely undefined, but with one clear line, that there has to be a completed contract. Now, if he's right, he wins. If he's wrong, he loses. So that's what you ought to help us with. His argument that there has to be a contract ignores the fact that there is a host of commercial activity that can give rise to suit short of a contract. The litigants, Dell and Intel, should not have to sit back and be subjected to threats of litigation and suit on the patent and only be able to... The suit has nothing to do with it. This is not a court of equity. We're trying to decide whether there's jurisdiction or there's immunity. The inconvenience or stress on your clients doesn't weigh in this balance. This is a legal issue. We need you to address the statute and the legislative history. Well, I've addressed legislative history. It makes it clear that there is a broad spectrum. The U.S. Supreme Court, in looking at that issue precisely, did not draw any bright lines. The legislative history indicates that it's up to the courts to decide these. And no court has come down and no court has decided, even though the Supreme Court has looked at it twice, that there is a bright line requiring a contract that Intel and Dell, in this case, would have had to sign that contract that was offered to them. Sign it. And then perhaps wait... The issue now is before the Supreme Court, whether you sign a contract and there's no breach, and then you can bring a D.J. action as well. His position is there isn't sufficient commercial activity, in the context of this case, in the absence of a license agreement having been signed by one of the accused infringers. Obviously, you disagree with that, but you ought to tell us why. Because under Welkover, the Welkover case makes it clear that when a sovereign entity acts not as a regulator of a market, but as a private player in the market, then that is commercial activity. Where in that range of activity does commercial activity for purposes of statute occur? Is there acquisition of a patent enough? Well, certainly that is not a sovereign act. We understand that. But where in the range of commercial activity, under the exception part of the statute, does the commercial activity kick in? As soon as the foreign entity engages in something that is not a sovereign act. Where is that? In this case, where was that? When they acquired a patent in the United States, that is commercial activity. And when they continue... The patent alone is enough? It's enough. It's commercial activity. It's not a sovereign act. It's a commercial activity. And so at that point, they have stepped out from their public role and into their private role of obtaining a patent, and that is a commercial activity. Do you have any authority to support that proposition? No, other than Welkover that gives guidance and says that when you step into the market as a private player as opposed to a regulator of the market. Does Welkover assume the sufficient nature and quantity of activity and then try to discern whether it's sovereign or not sovereign? Welkover does instruct to look and all the authorities instruct to look at the nature of the act. Listen to the question. Does Welkover assume that the nature and level of the activity was sufficient as the predicate for its discussion about whether the activity was of a sovereign nature or of a private nature? No, I don't believe it does. But I don't also, Your Honor, believe that there's a requirement about the quantum of evidence that is required. I think it simply means that if you step outside of the public role into the private role, you are engaging in commercial activity. Now, that's a different question about whether or not the suit is based on that activity. It's just the first issue, which is, is it commercial or is it sovereign? And as to that, when you step outside and you obtain a patent, you are engaged in commercial activity. So you didn't need any of the negotiation and license-offering evidence at all. All you really needed to put on the table before the district court to establish the first point was the fact that CSIRO obtained U.S. patents. That was a commercial act, certainly, but the suit is based on their ongoing campaign. And there was so much evidence to put on the table. We put it all on the table. We put their entire... But do you agree with me that under your theory of the law, there was sufficient commercial activity and no sovereign activity simply by obtaining the patent? There was, yes, sufficient activity by obtaining the patent. However, that's not our suit. Our suit is not based on simply obtaining patents. And so we wouldn't have met that prong of eliminating the immunity. However, and what you're asking me... You made a satisfactory comment. We were satisfied, commercial but not based on. That's right, and that's the lower threshold. I'm not going to sit here and argue that that is a... Then how do you cover the other points? Based on? Yeah. Because our suit is based on the actual controversy between the parties, which is the proper scope and application of their claims. They have asserted throughout the industry and to individual participants including Dell and others that their patents, the proper scope and application of their patents, covers all wireless-compliant products, including those manufactured by Dell and Intel. We contest that, dispute it, and we file a suit based on it. And that is the core of the suit, which is what is the proper... You see, there's a hole in your argument, I think, because I believe Mr. Wagstaff is correct that the declaratory judgment action doesn't create jurisdiction. It creates a cause of action that otherwise wouldn't exist, but it doesn't create jurisdiction. So on the issue of jurisdiction versus sovereign immunity, I don't think you've responded. Well, one of the issues that we have to prove in order to go forward, certainly whether you call it an element or whether you call it in the Ninth Circuit case in Sun a fact that is necessary for us to establish to win, we have to show that there's an actual controversy. We have to show that we were placed under reasonable apprehension of suit... No question about that, but that goes to a different issue. On the issue of whether CSIRO was under the shield of the immunity or out from under the shield of the immunity and exposed, I don't see that you've responded. Well, in terms of whether they were exposed, they were exposed when they came to the United States and engaged in this two-year campaign to enforce the patents and all of the acts that were consistent with that, which are in the factual... Well, I don't understand what you're saying. They... How is your lawsuit based on the negotiations, as Mr. Wagstaff calls them? Well, it's not precisely based on the negotiations. What it's based on is their... It's based on the proper scope and application of their claims, and as to that issue, that is the core dispute, whether their claims cover the wireless... Your lawsuit is based on their effort to enforce their patents. Is that what you're talking about? That's exactly right. Their campaign... The lawsuit is based on their campaign to enforce the patents and to place us under reasonable apprehension of suit, both Intel and Dell, and based on that, and that's something we have to establish in this case. Well, there's no question that if it were a private party rather than an instrumentality of the Australian government, that if there were sufficiently credible threats, that you as the person threatened, the company threatened, would be able to file a declaratory judgment action, and there wouldn't normally be any question about jurisdiction. But here there's a question about jurisdiction that arises from the peculiar fact that the patent holder here is not a private company, but it's a government, and Congress has set up a special protection for foreign governments, whether wise or not. It's in the statute. We have to follow it. So you have to show us that it doesn't apply here. Right. And it doesn't apply because in the legislative history they've codified the restrictive theory which says that we will provide immunity to foreign governments, and we will restrict that immunity to sovereign acts. And when it's not a sovereign act, when they step into the private field like enforcing patents and like engaging in an enforcement campaign, they will not have immunity based on that conduct and based on that activity. And so Intel and Dell should not have to sit by and prove liability or stop making the proclamation. Well, why not? I mean, the premise of your argument seems to be if we could sue without any shield of immunity a private company that owns a patent, then we, under the exact same circumstances, should be able to freely sue a government. And his answer to that is no, you don't have a quality of treatment because Congress has erected a shield that protects the Australian government which does not protect General Motors or some other private entity. The shield stops when you step over the line from sovereign and public acts into private acts. That's what the Supreme Court in Wellcover indicated. When you step across that line, you enter into the area in which you should be sued, and they knew it. They intentionally did it. They want to raise 90 plus million dollars. We're not confused about what they're trying to do. We all understand the facts. None of the facts are contested. Of course, they're trying to enforce their patent. Of course, they made threats. Of course, they're trying to collect licensed revenues. Of course, of course. We don't need to go on and on about that. All absolutely commercial activities, all exactly what private enterprise does, none of which is a sovereign act, and they haven't argued it. Mr. Wagstaff will have more time after Mr. Shelton gets done, but he hasn't argued it. He can't argue that that is sovereign activity. It simply isn't. When you step out of the cover and the umbrella of the shield... I don't think he did argue that. I think his argument was quite different. I'm trying to get you to respond to what he did argue, not what he might have argued but didn't argue. Well, he argued that there was some quantum level of evidence that is required of commercial activity, and there's simply no support for that. There's no support that there is some quantum level, number one. Number two, there is no right line that is established either under statute or case law that indicates that it has to be a contract. In fact, the contrary is true. And the case law indicates that once you step over into the private acts, you are stepping into commercial activity, and you could be subject to suit based on that activity. And that is the core of the dispute, which is do their claims really cover our products or not, and do they cover the prior art or not? That's the core of our case. And we shouldn't, and I know that you've indicated this, but we should not have to sit by and prove liability, stop making our products, or sign a unilateral contract of maintenance. Do you understand Mr. Wagstaff's argument to be, and with specific reference to our interchange about the Lanham Act hypothetical, to be that the irreducible minimum of a contract goes away if there is a cause of action which is the basis as to which the conduct in question pertains? It's a nice theory, but there's no support in law for that. There's no support in law that says that the basis of a suit has to be a completed cause of action to eliminate this contract requirement. First, there's no contract requirement. Second of all, under the Ninth Circuit case in Sun, you simply have to base your suit on a fact that you otherwise would lose if you didn't prove. And in his case, there's no support for the idea that you have to have a completed cause of action that is the basis for the commercial activity that you form a suit on. But it doesn't matter. In our case, we have a- Time has expired. Thank you, Your Honor. Mr. Shelton. Mr. Shelton, we have a problem here, and that is we have two very bright lines being drawn in front of us. One bright line by Mr. Wagstaff, who says, commercial activity means you've got to have a license. And a bright line by Mr. Randall says, all you need is a patent. Now, the statute, neither the statute nor, as I can tell, the legislative history tells us exactly how to draw that bright line. Can you offer us a test that would help us? Yes, I can, Your Honor. The one thing that this Court has not heard this morning is the statutory test for commercial activity. No one has yet mentioned Section 1603D, in which Congress, although tautologically and in a circular way, defined what commercial activity is. That's why they haven't mentioned it, because it's tautological and circular. But go ahead. I'm sure you'll tell them. Yes, Your Honor. That's my intention to do so. So Section 1603D says that commercial activity should be a regular course of commercial conduct or a commercial transaction for act. Or a particular commercial transaction or act. Yes, Your Honor. Just to be precise. Thank you. I appreciate that. So that is the spectrum. And that's the reason why CSIRO didn't cite or discuss that. Well, what's the translation? Is obtaining a patent a commercial act, under the second part of that definition, or not? Your Honor, it may well be if the cause of action was related to the very issuance of a patent, which might lie, for example, if a foreign sovereign obtained a patent and a citizen of the United States who was claimed to be a putative inventor brought some action to correct an inventorship. But that's clearly not that issue here. And that's why none of the appellees here today are relying on the bare issuance of the patent as commercial activity. We are basing these two declaratory judgment actions exactly on the commercial activity that started in April 2003, which is the first letters from CSIRO to each of the appellees. Why is that commercial activity? It's commercial activity, Your Honor, because it bears all the hallmarks of patent licensing attempts that private parties engage in in this country every single day. You first send the letter out. And it may have a claim chart, as they did here. And the claim charts, in this case, said you probably infringed, both directly and indirectly, solely by virtue of implementing the IEEE 802.11 standards, which are widely implemented in this country. And secondly, we then have, after a number of in-person and telephonic conferences between the parties, we have this formal license offer that, Your Honor. Is the latter necessary, or is the initial letter enough? Your Honor, under your understanding, under your test. It certainly is commercial activity. And I'm putting aside the declaratory judgment. The question is, is the initial letter threatening a suit and offering a license by itself enough? It would be, Your Honor, if the cause of action could be based solely upon that letter. So it depends on what the letter says. If the letter says, put it in effect. But we know what the letter says. So the answer is no, the letter is not sufficient. Not in this case. At what point in the downstream trip do we finally get sufficiency? We get sufficiency, Your Honor, with the formal offers that were made for the license from CSIRO to the attendees. How about if it had just been informal? How about if it had just been a letter instead of a draft license agreement saying, you ought to consider taking a license? Would that be sufficient or not? It would be, Your Honor, if that offer could be accepted, and if it had sufficient terms. So even a term sheet could be sufficient, because that would fall under Section 1603B's definition of a commercial act. So clearly, making a license offer is a commercial act. Whether or not a transaction occurs. I'm having a bit of a disconnect here, and I want you to, I think it's my problem, not yours. But when you say sufficient, what you were saying, I think, was, was it not, that sufficient in order to get you to the level necessary to give you a right to a declaratory judgment under our case law, as opposed to sufficient to constitute commercial activity. I think what you just said, correct me if I misapprehend you, is that the first letter is commercial activity. Yes, Your Honor. Now, that may not get you a declaratory judgment, because of all of our case law from Arrowhead to Phillips, plastics, and all that, that says you've got to have more. But that, when you said sufficient, you weren't saying insufficient to be commercial activity, as I understand it. No, I wasn't. You were saying insufficient to constitute a cause of action to declaratory. That's exactly right. OK, now I understand that. And sufficiency, though, matters, because the, I submit that there is no bright line. That the, if there is to be a bright line, it has to always be guided by what the claim is, and what the claim is, and what the cause of action is. And Justice Breyton. The bright line for commercial activity? To determine whether, when there's enough. Because certainly, there can be such a de minimis context, such as in Zidane versus Saudi Arabia, in which the only activity that happened in the United States was a phone call. And that was held to be a precursor. That wasn't commercial activity to call someone up and say, might you be interested in seeking employment by Saudi Arabia? So if it's of such a de minimis nature, it might be completely insufficient to be commercial activity. Now, are you into the based on part of the requirement, or the commercial activity? Because it sounds to me like you're eliding the two here. They're linked, Your Honor. And I submit that that is the way that a court must, in the first instance, determine when there has been enough. Because Searle's only question, really, presented here is not that they have never claimed that their activities were those peculiar to a sovereign. They have even admitted in their work. Let me give you an example. To go back to my Lanham Act case. I don't know why I'm so wedded to it. It seems to me, at least, to be helpful. You could have extensive advertising, let's say, which doesn't constitute a contract, but seems to me plausibly enough to constitute commercial activity in anticipation of ultimately entering into contracts and making sales of the vehicle. Now, you could have lots of that activity. As long as you don't do anything, you don't say anything disparaging about somebody else's product or whatever, you haven't generated a cause of action. But it's plenty of commercial activity. It just is commercial activity on which no claim could be based, to use the word based. But you wouldn't say that that isn't commercial activity until you say something on which a claim could be based, right? It's two separate questions, commercial activity versus based. I was understanding you to be saying, well, you could have minimal commercial activity, but until some claim could be based on it, it's not really commercial activity. That's not what you're saying, correct? Well, Your Honor, I'm suggesting that in certain cases where it's not clear, so for example, a breach of contract action, it would be pretty clear to a district court that the commercial activity that would be related to a breach of contract action would be either negotiation, execution, or performance of the contract. That's easy. This is a little harder, because this is about a commercial tort. And Cyrus Counsel argued that, and admitted to you, to your question, Judge Bryson, that in the case of a commercial tort, like a Lanham Act violation or unfair trade practices, that would be sufficient. Well, what is a DJ action if not a commercial tort in reverse? In other words, there is an allegation that a commercial tort has happened, and the DJ action seeks to clear the air over that commercial tort. So the activity around the allegation of the commercial tort is what gives rise to the DJ action, and that is the sufficient commercial activity for that instance and in this case. I would have thought you might have answered Judge Bryson's question by saying, Your Honor, it really doesn't matter whether I allied the based on with commercial activity, because for the purposes of the statute, the only kind of commercial activity that is relevant to escaping from the immunity problem is commercial activity on which an action can be based, because that's what the statute says. So whether something is commercial activity in the abstract is really not important to my case, Your Honor, but what is important is whether there was a commercial activity which would qualify as the kind of commercial activity on which an action could be based, in which case the definition is nicely circular. That would have been a much more articulate way to put it, Your Honor. And I agree. That's really precisely what I'm trying to say, is that Sarum has come to this Court and said, you must have a tort or a contract. And they don't even go to the statute. They go to the legislative history, which is a form of congressional dictum, after all. It's helpful, but Congress specifically left it to the courts to determine what commercial activity is. So we go to the statute. We look there. We look at all these cases. And all that Welcover told the Supreme Court in Nelson-Welcover is that you look at the fundamental nature, and that's not even an issue here. Sarum's not coming to this Court and saying that these were sovereign activities and not private. So we can just go right past that hurdle. So in a sense, because Sarum does admit that you could colloquially call their licensing campaign commercial activity, and that's fatal to them. Because then you go right to based upon. And we look at, are these declaratory judgment claims based upon their commercial activity of instituting this licensing campaign in the United States? The answer is resoundingly yes. They are all based upon. And I'm trying to respect your admonition, Judge Michelle, not to duplicate anything. But I want to say that the based upon aspect of the claims that are at issue here, as the district court, I'm sorry, as the DC Circuit made clear in Kerbin versus Societe Air France, at least one fact without which the plaintiff's cause of action will fail is sufficient for commercial activity. Tied up inextricably with every claim for all of the appellees here in the declaratory judgment actions is the requirement to show a reasonable apprehension of suit and that there be an actual controversy under the Declaratory Judgment Act. So that is the fact upon which every claim that is at issue here is tied to the commercial activity of CSIRO. And so all of this, the question about has there been enough, and do you need a contract, and all that, you really do, going back to your question, Judge Bryson, you really do have to look at what the nature of the claim is. And we admit that this is certainly a case of first impression. It's not common that foreign sovereigns go around and rattle their patent sabre to other countries and to an entire industry. State sovereigns do it all the time. We have quite a few of those kinds of cases. And much the same analysis in the 11th Amendment. And I want to also add to what Learned Counsel for Intel argued that all the claims that are at issue here in terms of being based upon the necessity to determine whether the patent claims are infringed and invalid, which requires a determination of the scope, in our case, there are also additional claims that have been brought to you that are key here. One is for patent misuse. And the patent misuse springs out of the failure of CSIRO to abide by its promise to the IEEE in 1998 that it would license this patent on reasonable and non-exterminatory grounds. And that is a separate action that is tied directly to their activities in the United States. And their offer of $4 per unit at the end of the license term is, if you accept all the well-pleaded allegations in our complaint as true, is a must. That is per se not reasonable. And we have a second cause of action that is also directly tied to their conduct in the United States. What do you mean, per se not reasonable? I don't understand what you're expressing when you say it's per se not reasonable. Under what rules? Well, under the standard of review is what I mean, Your Honor, in the sense that although CSIRO, in their brief, said, well, we did all sorts of research and we think that is a reasonable amount. Because this court has to take all the well-pleaded allegations as true, we must also take our allegation that $4 is non-reasonable as true. And that's, again, just going back to the fact that their license campaign in the United States is the basis of every single claim. And so when you seek, if there is a bright line or if you even need to find a bright line, you have to look at the claims and then look at whether there has been another commercial or two. Do you think, changing the issue for a moment, if I may, do you think that the declaratory judgment issue, jurisdiction under the declaratory judgment issue, is permissibly within our appellate jurisdiction, given that we indisputably have appellate jurisdiction over the sovereign immunity issue? Your Honor, it was not part of the interlocutory appeal, and I know that's what you're reflecting. I think that it is. It could not independently have been brought to us. That's correct, Your Honor. It is here in the briefs. It is part of the appeal. And the question arises whether we can exercise jurisdiction under the standards applicable to pendant appellate jurisdiction, or whether those standards say that we can't reach that issue. Right. I believe that you can, Your Honor. And in this case, we admit that the facts are all the same. Are you and Mr. Randall in agreement on that? Do you know offhand? I mean, I can't speak for Elk Hill. I'm not. I'm arguing on behalf of. Could you let Mr. Randall speak on that? Yeah, sure. I'm arguing on behalf of Microsoft Corporation, Hewlett Packard companies, and. Maybe if Mr. Randall would just tell us whether. I think that you certainly can reach it if you so choose. OK. That was my question. OK, thank you. Did that come out of my time? Would you care to, in one of your sentences, tell us why you think we can reach it? I think you can reach it because the facts are intertwined. The legal issues are maybe not quite as close. But certainly because I've been arguing that if you want to find this elusive right line that CSIRA can't, you do need to look at what the claims are that are in the litigation. And the claims are all based on the Declaratory Judgment Act. And I submit that that is the touchstone to determining. The Declaratory Judgment Act action raises the merits of infringement and validity, doesn't it? It does. What's that got to do with immunity? Well, what that has to do with immunity is then we look to see if their activity was commercial, such that they have lost their sovereign immunity, that they might have endured otherwise. What's the connection? The connection is that it lost me. Yeah, I got a little lost on that one. How are those facts intertwined? How are the facts of validity and non-infringement intertwined with the fact of whether there was commercial activity? I'm sorry. I misspoke. The facts of how we got to the Declaratory Judgment Act are intertwined with the sovereign immunity issue, because all of the facts upon which the DJ claims are predicated are the same facts related to the sovereign immunity issue. Because that is the commercial activity. They are one and the same. I see. I think you're right. Mr. Weinstein? Thank you, Your Honor. Let me start with the bright line, because I'm not making it up. You want to talk about ambiguity? If they act as a government, no matter what they do, including just getting a patent, if it's a letter, it might be enough. There is a line, and Congress told us there's got to be one. They tell us the end of a spectrum, the word spectrum. This is not just legislative history. This is because when you look at the, Your Honor, commercial activity is one thing. But we're analyzing here if there are sufficient quants of commercial activity under the statute. All right, Professor Weinstein, let me try something on you. If I were arguing the case for Dell, which I'm clearly not, you understand, but if I were, here's what I would pose to the court. I would say, in order to escape this immunity problem, we have to have an action based on commercial activity. Do you agree? Yes, sir. So I would say the commercial activity that's involved by Australia, by CERO, however we pronounce your shorthand, is the following. It's inventing a product and making a profit by patenting that product and licensing the patent to users. That's the commercial activity. Then I would say the suit is based on that activity when it addresses the enforceability of the patent for licensing purposes. Now, what's wrong with that argument? With due respect, it's wrong on both counts. Let's start on the first count. Commercial activity. The notion that merely getting a patent. No, no. It's not merely getting a patent. It's inventing a product for the purposes of patenting it and then licensing it to users. Is that not commercial activity? It's not sufficient commercial activity, as Congress tells us. It is commercial activity, but it's not sufficient commercial activity under the statute because it doesn't reach the level of right of the spectrum. But in addition, on the second point, because of my time, the based on is really where it's not there. Because under your analysis, every case projectilely will automatically open the door every time the coronation gets a patent. There is nothing to just that. And if I could, I would direct the court's attention to page 357 of the Saudi Arabia case. And if the court reads that, you will see the line between a case being in connection with activity and being based on activity. And they distinguish the two. It is not enough the lawsuit is in connection with some commercial activity. To be based on, you must look at the elements of the cause of action here. It's not their debt relief. It's my client's punitive claim. And even their misuse and estoppel are defensive. So we look at the four corners of my client's infringement claim. Does the infringement claim, is it based on, not related to tax, not there will be evidence of negotiations when we try the case. Are the claims, to put it more bluntly, could we litigate the infringement claim, that is, the validity, the prior art, the infringement, without having to look at the negotiations at all? And the answer is clearly yes. Now, let me ask just one question. You said, I believe, that in response to Judge Plager's question, a good question to tease this out, that the inventing with intent to commercialize the products of the invention, i.e., the patent, would be commercial activity, but not enough. Now, if Congress were tomorrow to enact a statute which it would say, it is a form of, let's say, affirmative patent misuse. Add another section to Title 35, which is actionable by anyone with a product that relates to a patent. For someone to invent with intent to improperly enforce a patent, that's the tort. Would that convert that commercial activity, which previously was insufficient, into sufficient commercial activity, even though there was no contract in the picture? Yes, Your Honor. So that your irreducible minimum, once again, is not an irreducible minimum. The bright line. Your bright line. No, no, no. I'm having trouble. Because your bright line has a big hole in it, which is for any cause of action that Congress has created, as to which that activity is sufficient to trigger the cause of action. Your Honor, if I could, the reason I draw the bright line is Congress drew the bright line. If Congress changes the line. It's not changing the definition of commercial. It's changing, all it's doing is adding a new cause of action. Which leads us to the question, when it added the Declaratory Judgment Act as a cause of action, why does your definition of commercial not isn't it satisfactory? That, to me, is an Article III problem. Because if you allow the mere procedural device of a declaratory relief action, where they can come in and raise defenses preemptively. And your Honor, I have to emphasize, since you focus on torts. Well, I understand. I understand. I'm just using torts as a convenient. Well, but Congress has addressed torts separately. But I'm talking about contracts. But your Honor, it does bring us down to the last thing, which is, I think we can get there. Which is, is this case based on, as the law requires, not but for, not in connection with, is it based on, that is, we don't have a cause of action without infringement and whatever else. And let me end with this, Your Honor. Before you end, you keep telling us Congress threw the line. Remind me where Congress threw the line. In the legislative history? Well, no. We've just been, the answer is yes, but I'll tell you why. Well, I don't read legislative history except when it's in favor of what I want. The general proposition in legislative history doesn't tell us very much. Here's when you do read legislative history, when we have the debate we've had today, which is the statute has some ambiguity. The moment we have ambiguity is the moment all of us read the legislative history and figure it out. It's called archaeology. We're doing our best. But the based on is a specific, limiting aspect to the exception. It must be based on, not connected with, not but for, not related to. And that's why I say 357. Because you know what, there would have never been any torture in the Saudi Arabia case if they'd never employed it. And here, we don't need the negotiations for the affirmative point. The defenses we're not talking about. Misuse of defense in this context. Stop those cruel defenses. Declare us religious and let them bring their defenses first. So now I'm closing, Your Honor. I'm right here on the East Coast. It was a great dub to Sinti's, the third base of the Orioles. He said, we need to move first base 10 feet further away from home because there are too many close plays. Your Honor, line drawing is the function of court with all due respect. And here, Congress has given you a guidance. And it's given you a phrase, which in this case, the based on phrase, will allow my client, which is a foreign sovereign, to take the benefit of the presumption of this meeting. Thank you, Your Honor. All right. We thank all counsel. We'll take the case under review. All rise. The honorable court is adjourned until 2 o'clock in the afternoon.